IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



UNITED STATES OF AMERICA

v.

AUSTIN W. FRAZIER,
H. CLAIBORNE FRAZIER,
CRESCO ELMORE FRAZIER, JR., and
SPENCER P. COPELAND

18 U.S.C. § 1349
18 U.S.C. § 1956(h)

3:12CR141 DPJ-FKB

**The Grand Jury charges:**

At all times relevant to this indictment:

1.      Defendants **AUSTIN W. FRAZIER** (hereinafter "A. FRAZIER"), **H. CLAIBORNE FRAZIER** (hereinafter "C. FRAZIER) and **CRESCO ELMORE FRAZIER, JR.** (hereinafter "C.E. FRAZIER"), owned and operated C. E. Frazier Construction Company, Inc. (hereinafter "Frazier Construction"), a construction business with a principal office address in Madison County, Mississippi.

2.      Defendant **C. E. FRAZIER** is the father of defendant **A. FRAZIER** and defendant **C. FRAZIER**.

3.      Defendant **A. FRAZIER** served as Secretary/Treasurer of Frazier Construction.

4.      Defendant **C. FRAZIER** served as Vice President and Director of Frazier Construction.

5.      Defendant **C. E. FRAZIER** and **C. FRAZIER** created Frazier Development, LLC (hereinafter "Frazier Development"), in which **C. FRAZIER** was a member and **C. E. FRAZIER** was a member and the registered agent for service of process.

1

6.      Defendant **SPENCER P. COPELAND** (hereinafter "COPELAND") was the step-brother of **A. FRAZIER** and **C. FRAZIER**.

7.      Travelers Casualty and Surety Company of America (hereinafter "Travelers") is a Connecticut corporation with its principal place of business located in Hartford, Connecticut. From approximately 2002 through approximately 2008, Travelers provided a number of surety bonds to Frazier Construction.

## COUNT 1

8.      Beginning in or about January 2003, and continuing through a date unknown but at least through in or about June 2008, in Madison County, in the Jackson Division of the Southern District of Mississippi, and elsewhere, the defendants **AUSTIN W. FRAZIER, H. CLAIBORNE FRAZIER and CRESCO ELMORE FRAZIER, JR.**, and others known and unknown to the Grand Jury,  did knowingly and willfully conspire with each other and with others known and unknown to the Grand Jury to commit one or more of the following offenses against the United States:

(A)     To knowingly devise a scheme and artifice to obtain funds in the form of construction loans under the custody and control of at least four (4) banks, including but not limited to BancorpSouth Bank and Merchants and Farmers (M & F) Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC), by means of false and fraudulent pretenses and representations, with the intent to defraud said banks, in violation of Section 1344, Title 18, United States Code.

(B)     To knowingly devise a scheme or artifice or intend to devise a scheme or artifice to defraud and to obtain money from Travelers by means of materially false and fraudulent pretenses, representations, or promises and, for the purpose of executing the scheme, did place or cause to be placed in any post office or authorized depository for mail matter, documents to be sent or delivered by the Postal Service, or deposit or cause to be deposited documents to be sent or delivered by any private or commercial interstate carrier, in violation of Section

2

1341, Title 18, United States Code.

(C) To knowingly devise a scheme or artifice or intend to devise a scheme or artifice to defraud and to obtain money from Travelers by means of materially false and fraudulent pretenses, representations, or promises and, for the purpose of executing the scheme, did transmit or cause to be transmitted by means of wire or radio communications in interstate commerce, any writings, signals or sounds, in violation of Section 1343, Title 18, United States Code.

## BANK FRAUD

9. It was an object of the conspiracy that defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER** would make materially false and fraudulent statements, representations and promises to BancorpSouth Bank and Merchants and Farmers (M & F) Bank, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC), regarding the use of construction loan proceeds and the status of construction projects operating through limited liability companies affiliated with the defendants, in order to induce the banks to release loan proceeds in the form of draws on said loans that otherwise would not have been authorized, and to obtain loan proceeds for the Defendants' personal use and benefit, as well as to fund and support other unrelated ongoing construction projects of Frazier Construction and Frazier Development not affiliated with the projects securing the construction loans.

*BancorpSouth Bank and Van Buren Group, LLC*

10. It was part of the conspiracy that defendant **C. FRAZIER**, operating through Frazier Development, LLC,  organized Van Buren Group, LLC, in approximately March 2001 for the purpose of constructing condominiums in Oxford, MS, and defendant  **C. FRAZIER** solicited investors for the limited liability company and served as its registered agent for service of process.

11.     It was part of the conspiracy that defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER**, doing business as Frazier Construction, would perform the construction as a general contractor.

12.     It was part of the conspiracy that after several of these condominiums were pre-sold, Van Buren Group, LLC, obtained a construction loan for approximately $5,400,000.00 from BancorpSouth Bank to provide additional funding for the construction of the condominiums.  Defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER** signed personal guarantees for the loan. The terms of this loan required that payments be made to BancorpSouth Bank as the condominiums were sold.

13.     It was part of the conspiracy that some of the condominiums were sold by defendant **C. FRAZIER** on behalf of Van Buren, LLC, in cash transactions.  Thereafter, defendants **A. FRAZIER, C. FRAZIER and C. E. FRAZIER** diverted significant portions of the sale proceeds for their personal use and benefit as well as to fund and support unrelated Frazier Construction and Frazier Development construction projects that were in arrears, all to the detriment of BancorpSouth Bank.

14.     It was part of the conspiracy that defendant **C. FRAZIER** would provide warranty deeds to the investors who purchased the condominium units without providing a release of the lien BancorpSouth Bank held as collateral for the construction loan and without notifying the investor purchaser of the security interest held by BancorpSouth Bank, all to the detriment of BancorpSouth Bank and the investors.

15.     To accomplish the objectives thereof, defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER** would represent to to BancorpSouth Bank officials that the condominiums

4

had not sold.

*Merchants and Farmers (M&F) Bank and Olde Colony, LLC*

16.     It was part of the conspiracy that defendant **C. FRAZIER**, operating through Frazier Development, LLC,  organized Olde Colony, LLC, in approximately October 2001 for the purpose of developing commercial property in Ridgeland, Mississippi, and defendant **C. FRAZIER** solicited investors for the limited liability company and served as its managing partner  and registered agent for service of process.

17.     It was part of the conspiracy that to fund this development, Olde Colony, LLC obtained a construction loan for approximately $2,860,000.00 from Merchants and Farmers Bank (hereinafter "M&F Bank") to construct commercial buildings on real property in Ridgeland, Mississippi.  The commercial development served as collateral for the loan.

18.     It was part of the conspiracy that defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER**, doing business as Frazier Construction, would perform the construction as a general contractor.

19.     It was part of the conspiracy that defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER** would make false and fraudulent statements and representations to M&F Bank regarding the progress of the construction and the payment of subcontractors in order to satisfy the bank's conditions for releasing funds or "draws" under the construction loan.

20.     It was part of the conspiracy that defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER** would submit false pay applications bearing the forged signature of an architect falsely reflecting the completion percentage of the project in order to get loan proceeds from M&F Bank.

21.     It was further part of the conspiracy that defendants **A. FRAZIER, C. FRAZIER and C. E. FRAZIER** diverted significant portions of the construction loan proceeds for their personal use and benefit as well as to fund and support unrelated Frazier Construction and Frazier Development construction projects that were in arrears, all to the detriment of M&F Bank and investors in Olde Colony, LLC.

22.     In furtherance of the unlawful bank fraud object of the conspiracy and to accomplish the objectives thereof, the following acts, among others, were committed:

(A)     On or about September 5, 2001, BancorpSouth Bank issued a loan for $5,400,000.00 to Van Buren Group, LLC.  BancorpSouth filed a lien against the condominium development to include any completed condominium units as security for the loan.

(B)     On or about and between January 22, 2003, and February 24, 2004, defendant **C. FRAZIER** sold approximately eight units of the condominiums.  On each sale, **C. FRAZIER** obtained payment from the buyers in the form of cash or check payable to the Van Buren Group, LLC.

(C)     On or about March 27, 2003 and March 23, 2005, defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER** met with BancorpSouth bank representatives regarding the status of the loan and informed bank representatives that the condominiums had not sold.

(D)     On or about October 4, 2004, Olde Colony, LLC borrowed approximately $2,860,000.00 from M&F Bank.  On or about that same date, defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER** all signed guarantees on behalf of Olde Colony, LLC, and in favor of M&F Bank.

6

(E).    On or about October 4, 2004, defendants **A. FRAZIER and C. FRAZIER** opened a checking account with M&F Bank in the name of Olde Colony, LLC.

(F)    On or about June 27, 2005, in order to get a construction permit required to support a withdrawal of M&F Bank construction loan proceeds, defendant **C. FRAZIER** presented to the City of Ridgeland a forged stamped design drawing purportedly from the project architect, which had been created by defendant **C. FRAZIER** at the offices of Frazier Construction.

(G)    On or about August 21, 2006, M&F Bank entered into a forbearance agreement regarding the construction loan for Olde Colony, LLC.  This agreement was signed individually by defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER**, and by **C. FRAZIER** on behalf of Olde Colony, LLC.  Thereafter, similar forbearance agreements regarding this construction loan were executed by these same defendants in their individual capacities and by **C. FRAZIER** on behalf of Olde Colony, LLC, the last occurring on or about July 27, 2007.

## MAIL AND WIRE FRAUD

23.    It was an object of the conspiracy that defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER** would make materially false and fraudulent statements, representations and promises to Travelers, the bonding agent for Frazier Construction, in order to continue to obtain Travelers bonds for new construction jobs, to obtain funding to pay Frazier Construction subcontractors, and to obtain funding to continue the daily business operations of Frazier Construction to complete its outstanding construction projects.

24.    It was part of the conspiracy that false and fraudulent information and documents,

including but not limited to false financial statements demonstrating millions of dollars in assets

and false information negating any significant liabilities or lawsuits concerning Frazier

Construction and defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER**, individually,

would be sent to Travelers by means of the United States mails, private and commercial carriers,

and interstate wires, either by means of facsimiles or by a computer emailing system.

     25.     It was part of the conspiracy that defendants **A. FRAZIER, C. FRAZIER, and

C. E. FRAZIER** would provide Travelers false and fraudulent information and documentation to

conceal the payment by Frazier Construction of salary to defendant **C. FRAZIER** despite the

specific requirement of Travelers that such payments cease.

     26.     It was part of the conspiracy that as a result of these false and fraudulent

statements and representations, defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER**

would cause Travelers to send checks to Frazier Construction through the U.S. Mails or by

private or commercial carriers, or cause Travelers funds to be wire transferred to financial

institutions for the purported use and benefit of Frazier Construction to complete its construction

projects and satisfy its financial obligations, including but not limited to payments owed to

subcontractors and employees.

     27.     It was part of the conspiracy that defendant **A. FRAZIER** and others would forge

subcontractors' signatures on waiver and release forms which were required by Travelers as

acknowledgment of subcontractors' receipt of payments from Frazier Construction and

Travelers.  Defendant **A. FRAZIER** would return these forged documents to Travelers either

through the U.S. Mails or by private or commercial courier, or by electronic mail and then issue

stop-payment orders on the checks or convert those payments to the personal use and benefit of

defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER**.

28.     In furtherance of the unlawful mail fraud and wire fraud objects of the conspiracy

and to accomplish the objectives thereof, the following acts, among others, were committed:

(A)     In or about June 2007, Travelers claim representatives met with

defendants **A. FRAZIER and C. E. FRAZIER** regarding bond claims filed with Travelers by

Frazier Construction subcontractors who had not been paid for their work.  During this meeting

the defendants reassured Travelers that income from ongoing construction projects would enable

Frazier Construction to pay its subcontractors on its bonded construction projects and that

Travelers would not need to pay these claims on behalf of Frazier Construction.

(B)     In or about December 2007, defendant **A. FRAZIER** emailed Travelers

claims representatives requesting immediate financial assistance.

(C)     In or about January 2008, Travelers representatives met with defendant

**A. FRAZIER** regarding the funding for Frazier Construction limited to payroll, office rental

expenses, and office equipment.  During this meeting Travelers advised defendant **A. FRAZIER**

that Travelers would not cover salary payments for defendant **C. FRAZIER or C. E. FRAZIER**.

(D)     On or about January 3, 2008, Travelers wire transferred approximately

$500,000.00 to one of Frazier Construction's operating bank accounts in Mississippi.

(E)     On or about January 11, 2008, Travelers wire transferred approximately

$516,750.00 to one of Frazier Construction's operating bank accounts in Mississippi.

(F)     On or about January 11, 2008, defendant **A. FRAZIER** and others

diverted a Frazier Construction payment payable to Star Masonry in the approximate amount of

$8,787.50 to the use and benefit of defendants **A. FRAZIER, C. E. FRAZIER** and others.

(G)     On or about January 16, 2008, defendant **A. FRAZIER** and others diverted a Frazier Construction payment payable to Star Masonry in the approximate amount of $9,737.50 to the use and benefit of defendants **A. FRAZIER, C. E. FRAZIER** and others.

(H)     On or about January 23, 2008, defendant **A. FRAZIER** and others diverted a Frazier Construction payment payable to Star Masonry in the approximate amount of $8,288.75 to the use and benefit of defendants **A. FRAZIER, C. E. FRAZIER** and others.

(I)     On or about February 5, 2008, defendant **A. FRAZIER** and others diverted a Frazier Construction payment payable to Star Masonry in the approximate amount of $3,893.75 to the use and benefit of defendants **A. FRAZIER, C. E. FRAZIER** and others.

(J)     On or about June 16, 2008, defendant **A. FRAZIER**, on behalf of Frazier Construction, advised Travelers representatives that Frazier Construction lacked funds to finish two construction projects and would abandon further work on those projects.

(K)     In approximately June 2008, defendants **A. FRAZIER, C. FRAZIER, and C. E. FRAZIER**, closed Frazier Construction and ceased construction projects under that name.

All in violation of Section 1349, Title 18, United States Code.

## COUNT 2

29.     The allegations contained in paragraphs 1-7 and 23-28 of this indictment are hereby re-alleged and incorporated herein as if fully set forth in this paragraph.

30.     Beginning in or about December 2007 and continuing through at least in or about June 2010, in Madison County, in the Jackson Division of the Southern District of Mississippi and elsewhere, the defendants **AUSTIN W. FRAZIER, CRESCO ELMORE FRAZIER, JR.,**

10

**and SPENCER P. COPELAND**, and others known and unknown to the Grand Jury, did knowingly conspire with each other and other persons both known and unknown to the Grand Jury to commit the following offense against the United States:

> to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud and wire fraud, with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of such specified unlawful activity, in violation of Section 1956(a)(1)(B)(i), Title 18, United States Code.

31.     It was an object of the conspiracy for the co-conspirators to use funds under the custody and control of Travelers, which was derived from mail fraud and wire fraud, to conduct various financial transactions which would enrich themselves to the detriment of Travelers, Frazier Construction, and creditors of Frazier Construction by converting some of Frazier Construction assets under the control of Travelers to the co-conspirators' own use and benefit.

32.     It was part of the conspiracy that the co-conspirators would cause assets of Frazier Construction, including but not limited to checks payable to Frazier Construction, to be deposited into the personal Regions Bank account ending -8251 in the name of Spencer Copeland to conceal from Travelers the nature, the location, the source, the ownership, and the control of these funds and thereafter divert these funds for the co-conspirators' own use and benefit.

33.     It was part of the conspiracy that the co-conspirators would cause assets of Frazier Construction, including but not limited to checks funded by Travelers on behalf of Frazier Construction business obligations and payable to Frazier Construction subcontractors, employees, and creditors to be deposited into personal Regions Bank account ending -8251 in the name of Spencer Copeland to conceal from Travelers the nature, the location, the source, the

ownership, and the control of these funds and thereafter divert these funds for the co-conspirators' own use and benefit.

34.   It was part of the conspiracy that the co-conspirators would establish the corporate entity named Construction Tech Solutions, Inc., using defendant **C. E. FRAZIER**'s personal construction license for the purported purpose of operating as a construction business and would open a bank account in the name of Construction Tech Solutions, Inc., (hereinafter "Construction Tech Solutions") for the purported purpose of funding the operations of a construction business.

35.   It was part of the conspiracy that the co-conspirators would cause assets of Frazier Construction, including but not limited to checks payable to Frazier Construction, to be deposited into the Regions Bank account ending -2631 in the name of Construction Tech Solutions to conceal from Travelers the nature, the location, the source, the ownership, and the control of these funds and thereafter divert these funds for the co-conspirators' own use and benefit.

36.   It was part of the conspiracy that the co-conspirators would cause funds derived from Frazier Construction assets to be deposited into an M&F Bank account ending -3120 in the name of Spencer Copeland to conceal from Travelers the nature, the location, the source, the ownership, and the control of these funds and thereafter divert these funds for the co-conspirators' own use and benefit.

37.   It was part of the conspiracy that the co-conspirators would cause funds derived from Frazier Construction assets to be deposited into a Trustmark National Bank account ending -1089 in the name of Spencer Copeland to conceal from Travelers the nature, the location, the source, the ownership, and the control of these funds and thereafter divert these funds for the co-conspirators' own use and benefit.

38.   It was part of the conspiracy that the co-conspirators would cause funds derived from Frazier Construction assets to be withdrawn in the form of officials checks from the M&F Bank account ending -3120 in the name of Spencer Copeland and from the Trustmark National Bank account ending -1089 in the name of Spencer Copeland and and thereafter provided to an unindicted co-conspirator for use in the purchase of a storage unit business located in the state of Georgia for the benefit of defendant **A. FRAZIER.**

39.   In furtherance of the unlawful money laundering conspiracy and in order to accomplish the objectives thereof, the following acts, among others, were committed:

(A)   On or about the dates set forth in the table below, the co-conspirators deposited checks payable to Frazier Construction into the personal account ending -8251 in the name of Spencer Copeland at Regions Bank in the following approximate amounts:

| PARAGRAPH NO. | DEPOSIT DATE | APPROXIMATE AMOUNT |
| --- | --- | --- |
| 39(A)(1) | 12/04/2007 | $ 8,500.00 |
| 39(A)(2) | 12/14/2007 | $16,001.00 |
| 39(A)(3) | 01/17/2008 | $14,000.00 |
| 39(A)(4) | 01/25/2008 | $27,684.40 |
| 39(A)(5) | 01/30/2008 | $22,000.00 |
| 39(A)(6) | 02/06/2008 | $ 3,911.97 |

(B)   On or about the dates set forth in the table below, the co-conspirators deposited checks written on behalf of Frazier Construction and payable to purported third parties into the personal account ending -8251 in the name of Spencer Copeland at Regions Bank in the following approximate amounts:

13

| PARAGRAPH NO. | DEPOSIT DATE | PAYEE | APPROXIMATE AMOUNT |
|---|---|---|---|
| 39(B)(1) | 12/05/2007 | Copeland Hauling | $18,570.00 |
| 39(B)(2) | 12/12/2007 | Star Masonry | $ 5,225.00 |
| 39(B)(3) | 12/17/2007 | Spencer Copeland | $10,025.26 |
| 39(B)(4) | 12/21/2007 | Star Masonry | $10,378.75 |
| 39(B)(5) | 01/04/2008 | Star Masonry | $ 5,250.00 |
| 39(B)(6) | 01/18/2008 | Star Masonry | $ 9,737.50 |
| 39(B)(7) | 01/25/2008 | Star Masonry | $ 1,812.50 |
| 39(B)(8) | 01/28/2008 | Star Masonry | $ 8,288.75 |
| 39(B)(9) | 02/11/2008 | Star Masonry | $ 3,893.75 |

(C)     On or about January 9, 2008, defendant **COPELAND** opened a bank account ending -2631 at Regions Bank in the name of Construction Tech Solutions, Inc. (hereinafter "Construction Tech Solutions account").

(D)     On or about January 22, 2008, defendant **COPELAND** transferred approximately $142,643.58 from Regions Bank account ending -8251 in the name of Spencer Copeland into the Construction Tech Solutions account at Regions Bank ending -2631.

(E)     On or about February 4, 2008, defendant **COPELAND** transferred approximately $56,266.42 from Regions Bank account ending -8251 in the name of Spencer Copeland into the Construction Tech Solutions account at Regions Bank ending -2631.

(F)     On or about the dates set forth in the table below, the co-conspirators deposited checks payable to Frazier Construction into the Construction Tech Solutions account

14

ending -2631 at Regions Bank in the following approximate amounts:

| PARAGRAPH NO. | DEPOSIT DATE | APPROXIMATE AMOUNT |
|---|---|---|
| 39(F)(1) | 04/24/2008 | $ 9,176.70 |
| 39(F)(2) | 05/28/2008 | $ 3,000.00 |
| 39(F)(3) | 07/15/2008 | $ 4,722.00 |

(G)     On or about October 1, 2008, defendant **COPELAND** obtained two cashiers checks each in the approximate amount of $75,000.00, totaling approximately $150,000.00, drawn on the Construction Tech Solutions account ending -2631 at Regions Bank.

(H)     On or about October 1, 2008, defendant **COPELAND** deposited a cashiers check drawn on the Construction Tech Solutions account ending -2631 at Regions Bank in the approximate amount of $75,000.00 into a new account ending -3120 in the name of Spencer Copeland opened at M&F Bank.

(I)     On or about October 1, 2008, defendant **COPELAND** deposited a cashiers check drawn on the Construction Tech Solutions account ending -2631 at Regions Bank in the approximate amount of $75,000.00 into a new account ending -1089 in the name of Spencer Copeland opened at Trustmark National Bank.

(J)     On or about the dates set forth in the table below, defendant **COPELAND** issued checks payable to defendant **A. FRAZIER** from the account ending -1089 in the name of Spencer Copeland at Trustmark National Bank in the following approximate amounts:

| PARAGRAPH NO. | DATE | APPROXIMATE AMOUNT | PAYOR | PAYEE |
|---|---|---|---|---|
| 39(J)(1) | 11/10/2009 | $6,000.00 | **COPELAND** | **A. FRAZIER** |
| 39(J)(2) | 11/11/2009 | $4,000.00 | **COPELAND** | **A. FRAZIER** |
| 39(J)(3) | 11/16/2009 | $6,000.00 | **COPELAND** | **A. FRAZIER** |
| 39(J)(4) | 11/17/2009 | $6,000.00 | **COPELAND** | **A. FRAZIER** |
| 39(J)(5) | 11/20/2009 | $4,000.00 | **COPELAND** | **A. FRAZIER** |
| 39(J)(6) | 11/23/2009 | $6,000.00 | **COPELAND** | **A. FRAZIER** |
| 39(J)(7) | 11/27/2009 | $4,000.00 | **COPELAND** | **A. FRAZIER** |
| 39(J)(8) | 11/30/2009 | $6,000.00 | **COPELAND** | **A. FRAZIER** |
| 39(J)(9) | 12/15/2009 | $5,000.00 | **COPELAND** | **A. FRAZIER** |

(K)     On or about January 11, 2010, defendant **COPELAND** withdrew approximately $76,559.80 in the form of an official check payable to an unindicted co-conspirator from the account ending -3120 in the name of Spencer Copeland at M&F Bank, closing this account the following day.

(L)     On or about January 11, 2010, defendant **COPELAND** withdrew approximately $10,099.81 from the personal account ending -1089 in the name of Spencer Copeland  at Trustmark National Bank, closing this account.

(M)     On or about January 12, 2010, an unindicted co-conspirator deposited approximately $120,019.61 into the unindicted co-conspirator's personal account ending -2514 at Regions Bank, which was comprised of the items and amounts set forth in the table below:

| ITEM | APPROXIMATE AMOUNT: |
|---|---|
| Official Check drawn on the personal account ending -3120 in the name of Spencer Copeland at M&F Bank | $76,559.80 |
| Official Check drawn on the personal account ending -1089 in the name of Spencer Copeland  at Trustmark National Bank | $10,099.81 |
| Cash | $33,360.00 |
| TOTAL | $120,019.61 |

(N)    On or about January 12, 2010, an unindicted co-conspirator sent a wire transfer totaling approximately $120,000.00 from the unindicted co-conspirator's bank account ending -2514 at Regions Bank to Compass Bank in Alabama toward the purchase of a storage unit business in Macon, Georgia for the benefit of **A. FRAZIER**.

All in violation of Section 1956(h), Title 18, United States Code.

_____
GREGORY K. DAVIS
United States Attorney

A TRUE BILL:
S/SIGNATURE REDACTED
Foreperson of the Grand Jury

This indictment was returned in open court by the foreperson or deputy foreperson of the grand jury on this the _12th_ day of _December_, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

17